UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
CLEAR CHANNEL OUTDOOR, INC.,        )
Boston Division                     )
                                    )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )    C.A. No.05- CV-10380 WGY
                                    )
INTERNATIONAL UNION OF              )
PAINTERS AND ALLIED TRADES          )
AFL-CIO, CLC, DISTRICT COUNCIL 35,  )
                                    )
         Defendant.                 )
_____)
```

### ANSWER AND COUNTERCLAIM AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

Defendant International Union of Painters and Allied Trades District Council No. 35 (hereinafter "DC35" or "Defendant") hereby answers the Complaint filed against it by Plaintiff Clear Channel Outdoor, Inc., as follows:

1. Admitted.

2. Admitted.

3. Defendant admits that is a labor organization representing employees in an industry affecting commerce, as defined in Sections 501(1), (3) and 2(5) of the Act (29 USCA § 142(1), (3), and 29 USCA § 152(5)), and within the meaning of Section 301 of the Act (29 USCA § 185). Defendant admits it maintains its principal offices and/or DC35's authorized officers or agents are engaged in representing or acting for employee members in the greater Massachusetts area, within the territorial jurisdiction of the court.

4. Defendant admits that on June 21, 2002, CCB (f/k/a Ackerly Media Group) executed a collective bargaining agreement with DC35 that covered certain classifications of CCB's employees, and that the CBA includes a procedure for processing and adjusting grievances, culminating in arbitration, declared in the agreement to be final and binding on the parties.

Defendant **denies** that the provisions of Article 18 limit the powers of the Arbitrator with respect to interpretation and application of the provisions of the CBA.

Defendant **admits only** that Article 18 of the CBA states that the arbitrator "shall not have the power or authority to add to, subtract from or modify the terms" of the CBA; otherwise, denied.

Defendant **admits only** that Article 6 of the collective bargaining agreement provides the Company with the right to promulgate and enforce all reasonable rules relating to safety and to take such measures as management determines to be necessary for the safe conduct of its business; otherwise, denied.

5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Defendant denies that Plaintiff implemented the safety policies in August 2002.

12. Admitted.

13. Admitted.

14. Denied. Defendant admits only that in a letter dated December 5, 2002, Mr. Shay responded to Mr. Fogell's November 27, 2002 letter.

15. Admitted.

16. Admitted.

17. Admitted. Further answering, Exhibit 8, attached to Plaintiff's Complaint, is not the unfair labor practice charge described in paragraph 17 of Plaintiff's Complaint.

18. Admitted. Further answering, the decision of the National Labor Relations Board is attached to Plaintiff's Complaint as Exhibit 9, not Exhibit 8, as stated in paragraph 18 of Plaintiff's Complaint.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Denied. Further answering, by letter dated January 28, 2005, Arbitrator Cooper rendered his Opinion and Award to the National Labor Relations Board.

25. Denied. Further answering, by letter dated January 31, 2005, AAA sent Arbitrator Cooper's Opinion and Award to CCB and DC35.

26. Defendant is without sufficient information to form a belief as to the allegations contained in paragraph 26 of Plaintiff's Complaint.

27. Admitted.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted.

## COUNTERCLAIM AND REQUEST FOR INJUNCTIVE RELIEF

Defendant, Painters and Allied Trades District Council No. 35, brings this counterclaim to enforce an arbitration award in which Arbitrator James Cooper ruled, on or about January 31, 2005, that Plaintiff Clear Channel's unilaterally implemented Drug and Alcohol Control Program and Motor Vehicle Points System violated the collective bargaining agreement and were null and void *ab initio*. Plaintiff has refused to abide by the terms of the Arbitration Award, and continues to apply and enforce policies declared

null and void by Arbitrator Cooper, including, but not limited to, requiring employees to submit to drug and alcohol testing. Defendant seeks to enjoin Plaintiff from continuing to enforce the policies declared null and void by Arbitrator Cooper pending the Court's ruling on the merits of Plaintiff's Complaint to Vacate the Arbitration Award and Defendant's Counterclaim to Enforce the Arbitration Award.

1. This is an action to enforce a labor arbitration award pursuant to § 301 of the Labor Management Relations Act (the "Act"), 29 U.S.C. § 185. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337.

2. Plaintiff, Painters and Allied Trades District Council No. 35 ("DC35"), is a labor organization within the meaning of 29 U.S.C. § 185 and is the duly authorized collective bargaining representative, pursuant to 29 U.S.C. § 152, et seq., of painters and allied trades employed in Massachusetts and other areas in New England. Plaintiff maintains its principal office in Roslindale, Massachusetts.

3. Defendant Clear Channel Outdoor, Inc. ("CCB"), is a Delaware corporation with a place of business in Stoneham, Massachusetts, and is an employer within the meaning of 29 U.S.C. § 152(2) and § 185.

4. Clear Channel Outdoor and Painters and Allied Trades District Council No. 35 are parties to a collective bargaining agreement with effective dates of August 1, 2001 through July 31, 2005.

5. The Union negotiated the current collective bargaining agreement with AK Media, the predecessor to Clear Channel Outdoor.

6. Article 18 of the collective bargaining agreement ("Grievance and Arbitration") provides for final and binding arbitration to resolve all grievances and disputes.

7. On or about November 18, 2002, Gary Shay, Operations Manager for Clear Channel, sent a letter to DC35 Business Agent Charles Fogell enclosing copies of a "Drug and Alcohol Control Program" and a "Motor Vehicle Points System." Shay indicated in his letter that he would be distributing the new policies to the bargaining unit, and that random drug testing would begin effective January 1, 2003.

8. After receiving Mr. Shay's letter of November 18, 2002, Mr. Fogell responded with a letter of his own dated November 27, 2002, in which Mr. Fogell wrote:

> Thank you for forwarding the proposed Drug and Alcohol Control Program and the Motor Vehicle Point Systems Program.
> However, District Council #35 must advise you that the referenced issues contained therein were subject matter of our current agreement negotiations.
> Therefore, your proposal is rejected.

9. On or about December 5, 2002, Mr. Shay sent a letter to Mr. Fogell in which he stated that Mr. Fogell "must have misunderstood the situation. I forwarded the two policies as a courtesy to you. They are not proposals, but are existing policies."

10. On December 16, 2002, Mr. Fogell wrote to Mr. Shay in response to Mr. Shay's December 5, 2002 letter:

> First and foremost I would like to thank you for your courtesy in forwarding your Drug and Driving policies as stated in your letter of December 5, 2002.
> In an attempt to avoid any misunderstanding, the implementation of these policies will be viewed as a unilateral change in the collective bargaining agreement and the Union may be forced to take the appropriate legal action against the company and its representatives.
> As a representative in the collective bargaining process you are aware that these subjects were present during our discussions.
> Thank you again for your courtesy and anticipated cooperation.

11. On or about February 12, 2003, DC35 filed an unfair labor practice charge with Region One of the National Labor Relations Board alleging that CCB violated Section 8(a)(5) of the Act by unilaterally establishing the Drug and Alcohol Control Program and Motor Vehicle Points System without notice to or bargaining with DC35.

12. On April 28, 2003, the NLRB deferred the charge to arbitration pursuant to the decision in *Collyer Insulated Wire,* 192 NLRB 837 (1971).

13. On or about May 19, 2003, DC35 filed a grievance with Clear Channel, indicating that it was grieving "the implementation of the driving and drug rules recently implemented by the Company."

14. On or about November 7, 2003, DC35 filed a demand for arbitration with the American Arbitration Association ("AAA").

15. Article 6, Section 1 of the Management Rights clause of the parties' collective bargaining agreement states:

> Except as specifically limited by the express provisions of this Agreement, the COMPANY retains exclusively to itself all rights to . . . promulgate and enforce all reasonable rules relating to safety, operations, and other matters not inconsistent with the terms of this Agreement . . . and otherwise to take such measures as management may determine to be necessary for the orderly, safe, and efficient conduct of the business. The COMPANY agrees that the above prerogatives will not be exercised in a discriminatory manner.

16. Article 17, Section 1, of the parties' collective bargaining agreement titled "Work Rules, Discipline, Discharge," states:

> The EMPLOYER shall have the right to post reasonable rules and regulations provided they are not in conflict with the terms of this Agreement.

17. Article 17, Section 6 of the parties' collective bargaining agreement sets forth the reasons for which Clear Channel may prohibit an employee from driving one of Clear Channel's vehicles:

> In the event it becomes necessary to prohibit an employee from operating a COMPANY vehicle per a demand of same by EMPLOYER'S liability insurance carrier or, an employee loses his drivers license, the EMPLOYER agrees to use every reasonable effort to assign such an employee to a non-driving assignment. In the event no such assignment is available, then the EMPLOYER shall have the right to suspend such an employee for the period of prohibition and/or such loss of license and until there is an open and available position for the employee to return to. The UNION will not challenge the EMPLOYER'S right to invoke such a work-availability suspension provided the EMPLOYER was in fact unable to reassign the employee to a non-driving position after reasonable efforts to do so as above.
>
> In the event that an employee loses his/her license or had his/her license suspended, he/she must report it immediately to his/her supervisor. Failure to do so will result in disciplinary action in accordance with the Work Rules and Discipline section of this Agreement.

18. Article 20, Section 1 of the parties' collective bargaining agreement pertains to alcoholism and drug abuse, and states:

> Alcoholism and drug abuse and emotional illness are to be recognized by the EMPLOYER as health problems and are to be treated by the parties as any other disease, provided the employee accepts assistance. However, the EMPLOYER shall have the right to terminate an employee so afflicted who refuses to acknowledge such a health problem and accept assistance, or who has received assistance for two treatments after the effective date of this Agreement and yet continues to demonstrate signs of active alcoholism or substance abuse. Provided such a health problem significantly impairs such an employee's work performance and the UNION is satisfied that the employee was made aware of his condition and refused assistance, the UNION shall not challenge the EMPLOYER'S termination of such an employee. Any employee shall have the right to refuse to work with another employee who is under the influence of alcohol or drugs.

19. Article 45 of the collective bargaining agreement is a "zipper clause" which provides:

> This Agreement supersedes and cancels all prior practices and agreements, whether written or oral, unless expressly stated to the contrary herein, and together with any letters of understanding executed in writing concurrently (or after) with this Agreement constitutes the complete and entire agreement between the parties, and concluded collective bargaining (except as provided for in the grievance procedure) for its term.
>
> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with the [sic] respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.
>
> Therefore, the COMPANY and the UNION, for the life of this Agreement, voluntarily and unqualifiedly waive the right, and agree that the other shall not be obligated, to bargain collectively with respect to any subject matter referred to or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered in this Agreement, even though subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

20. The parties' collective bargaining agreement contains the following work rules:

> The following work rules have been promulgated to provide for a safe, orderly and efficient work atmosphere. Because rules cannot be issue[d] to cover any conceivable work situation, the following concern only those issues that the parties have identified for mutual understanding and application. The EMPLOYER may establish other work rules as it deems necessary, provided, however, that the Union will be given prior notice of at least one week prior to the implementation of any new work rule and may discuss and negotiate the new work rule with the EMPLOYER prior to implementation. Unsatisfactory performance of work will be treated on a case by case basis.
>
> Category B Infractions & Rules
>
> No employee shall intentionally falsify any motor vehicle or industrial accident report.
>
> Category C Infractions & Rules

> Violation of any of the following work rules will normally be enforced by immediate discharge:
>
> 2. The use, consumption, or possession of alcohol or illegal drugs on company premises, in company vehicles, or on the job or during working hours.
> 3. Reporting to work under the influence of alcohol or drugs.
> 5. Failure to notify the supervisor of having a driver's license suspended or loss of license.

21. On October 5, 2004, a hearing was held before Arbitrator James S. Cooper. Representatives for Clear Channel Outdoor and DC35 were present at the arbitration hearing, and both sides presented evidence and witnesses in support of their respective positions.

22. By letter dated January 31, 2005, AAA sent Arbitrator Cooper's Opinion and Award to CCB and DC35.

23. Arbitrator Cooper ruled in his award that how an employer deals with alcohol abuse and with an employee's ability to safely drive an employer-owned vehicle are terms and conditions of employment and, upon demand, must be collectively bargained.

24. Arbitrator Cooper held that the parties already addressed the issues of safe driving and drugs and alcohol in Articles 17 and 20, respectively, of the collective bargaining agreement.

25. Arbitrator Cooper ruled that the provisions of Article 20 of the collective bargaining agreement and the Drug and Alcohol Control Program were significantly different.

26. Arbitrator Cooper found that the Drug and Alcohol Control Program provides for testing for legal and illegal drugs, gives Clear Channel complete discretion to

10

determine when there is "reasonable suspicion," and permits CCB to search employees' personal property, pursuant to "unannounced inspections" for "contraband," including firearms, weapons, and any other item classified as "contraband" by CCB.

27. Arbitrator Cooper found that the collective bargaining agreement does not provide for drug and alcohol testing, and only provides for the termination of an employee who has refused treatment or who has received "two treatments."

28. Arbitrator Cooper found that the Drug and Alcohol Control Program conflicted with the terms of Article 20 of the collective bargaining agreement with respect to an employee's return to work following voluntarily participation in a treatment program.

29. Arbitrator Cooper concluded, pursuant to Article 20 of the collective bargaining agreement, that an employee who is returned to work following treatment is allowed a second opportunity for treatment before he may be terminated for alcohol or drug abuse. The Drug and Alcohol Control Program requires that same employee to submit to a test showing "no detectable amount of substance prohibited by the policy;" to participate in a drug testing program monitored by the Company; and to agree to a signed letter accepting "new terms of continued employment."

30. Arbitrator Cooper held that the Motor Vehicle Points System is inconsistent with Article 17, Section 6 of the collective bargaining agreement, noting that while under the terms of the collective bargaining agreement, Clear Channel may prohibit an employee from driving only where either Clear Channel's insurance

carrier demands that it prohibit the employee from driving or if the employee's license has been suspended, the Motor Vehicle Points System provides that an employee will not be able to drive unless the employee measures up to Clear Channel's subjective evaluation of the employee's driving record.

31. Arbitrator Cooper ruled that the Drug and Alcohol Program and the Motor Vehicle Points System were not work rules, but rather total and complete changes in the employees' terms and conditions of employment, and that Clear Channel's right under Article 6 of the collective bargaining agreement to promulgate reasonable work rules did not allow it to drastically change the requirements of the collective bargaining agreement.

32. Arbitrator Cooper also held that pursuant to Article 45 of the collective bargaining agreement titled "Complete Agreement and Waiver," Clear Channel waived its right to bargain with respect to "'any matter referred to or covered in this Agreement,'" and that issues of drug and alcohol abuse and employee driving eligibility are referred to in the collective bargaining agreement.

33. In his Award, Arbitrator Cooper concluded that "the Company violated the Agreement when it unilaterally implemented its drug and alcohol policy and its motor vehicle point system," and ruled that "the Company's Alcohol Control Program and the Motor Vehicle Point System are hereby declared null and void *ab initio*."

34. To date and without any lawful justification, Plaintiff has refused to comply with the Arbitration Award by continuing to enforce the Drug and Alcohol Program and the Motor Vehicle Points System that Arbitrator Cooper declared void *ab initio*.

35. Upon information and belief, on March 10, 2005, Plaintiff required three bargaining unit employees to be randomly drug tested.

36. Defendant has a likelihood of success on the merits of its claim. The injunction sought requires Plaintiff to abide by an arbitration award issued pursuant to the grievance and arbitration provision of its collective bargaining agreement with Defendant.

37. The review of arbitration awards is extremely deferential. Arbitrator Cooper construed and applied the terms of the collective bargaining agreement, acted within the scope of his authority, and issued an award that draws its essence from the collective bargaining agreement.

38. Defendant will suffer irreparable harm if Plaintiff is allowed to continue to enforce the terms of the voided Drug and Alcohol Control Program and the Motor Vehicle Points System because it will make a mockery of the collectively bargained arbitration process and cast doubt among bargaining unit employees as to Defendant's ability to enforce that agreement.

39. Defendant will suffer irreparable harm if Plaintiff is allowed to continue to enforce the terms of the voided Drug and Alcohol Control Program and the Motor Vehicle Points System because an employee's privacy is violated by having to undergo a drug test. There is no adequate remedy for the humiliation and damage to the reputation of employees forced to submit to a drug test. A drug test, once administered, can never be ignored.

40. Defendant will suffer irreparable harm if Plaintiff is allowed to continue to enforce the terms of the voided Drug and Alcohol Program and the Motor Vehicle

Points System because continued drug testing of employees may result in the discipline, including discharge, of bargaining unit employees and enforcement of the Motor Vehicle Points System may result in the removal of an employee from driving company vehicles, which may ultimately lead to the employee's termination.

41. If an employee is terminated under either the Drug and Alcohol Control Program or the Motor Vehicle Points System, Defendant will be forced to file a grievance protesting the discharge, and the employee will be without employment until this Court has ruled on the merits.

42. Plaintiff will not be irreparably harmed by a preliminary injunction requiring it to abide by Arbitrator Cooper's award, as it will simply be required to abide by the negotiated terms of the collective bargaining agreement which already addresses the issues of drugs and alcohol and safe driving, and which was sufficient when Defendant and Plaintiff's predecessor initially negotiated the collective bargaining agreement.

43. The public interest favors judicial action to effectuate the means chosen by the parties for the settlement of their differences pursuant to their collectively bargained agreement. Allowing Plaintiff to continue to disregard the decision of an arbitrator renders the arbitral process meaningless.

44. The public interest supports the protection of an individual's privacy.

45. Accordingly, an injunction pending this Court's hearing and decision on the merits is necessary to prevent irreparable harm to Defendant and to protect the public interest.

**WHEREFORE**, Defendant respectfully requests that:

a. Clear Channel Outdoor be restrained and enjoined by temporary and permanent injunction from continuing to enforce the Drug and Alcohol Control Program and Motor Vehicle Points System;

b. Enter an Order confirming Arbitrator Cooper's Arbitration Award and requiring Clear Channel Outdoor to abide by the terms of the Arbitration Award;

c. Enter an Order dismissing Clear Channel Outdoor's Complaint in its entirety;

d. Award Defendant Painters and Allied Trades District Council No. 35 its attorney fees and costs in having to defend against Clear Channel Outdoor's Complaint and in having to file a Counterclaim and request for injunctive relief to enforce the Arbitration Award; and

e. Award such other and further relief as may be just and proper.

Respectfully submitted,

For the Defendant,
Painters and Allied Trades
District Council No. #35
By its Attorney,

_____
Jonathan M. Conti
BBO # 657163
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

DATED: March 24, 2005

## CERTIFICATE OF SERVICE

    I, Jonathan M. Conti, hereby certify that I caused a copy of the foregoing document to be in hand upon George A. Berman, Esq., Peabody & Arnold, LLP, 30 Rowes Wharf, Boston, MA 02110 and via overnight mail to L. Michael Zinser, The Zinser Law Firm, P.C., 150 Second Avenue North, Suite 410, Nashville, TN 37201.

                                            Jonathan M. Conti

March 24, 2005