IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., )<br>Boston Division )<br>)<br>   Plaintiff-Appellant, )<br>)<br>v. )<br>)<br>INTERNATIONAL UNION OF )<br>PAINTERS AND ALLIED TRADES, )<br>AFL-CIO, CLC, DISTRICT COUNCIL )<br>#35 )<br>)<br>   Defendant-Appellee. ) | Civil Action No.: 05-CV-10380-WGY |

## PLAINTIFF-APPELLANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

On February 28, 2005, Clear Channel Outdoor, Inc., Boston Division ("Clear Channel/Boston") filed a Petition to Vacate the January 31, 2005 Arbitration Award of Arbitrator James S. Cooper, with this court. On March 24, 2005, International Union of Painters and Allied Traders, District Council No. 35 ("DC 35") answered Clear Channel/Boston's Petition to Vacate and filed a Request for Preliminary Injunctive relief. Clear Channel/Boston opposes DC 35's Motion for Preliminary Injunction for the reasons stated herein, and those additional reasons to be presented to this court on April 27, 2005.

### I.    DC 35 HAS NOT COMPLIED WITH LOCAL RULE 7.1(A)(2)

At no time prior to filing its Motion for Preliminary Injunction did DC 35 confer or attempt to confer with Clear Channel/Boston to resolve or narrow the issue. Notably absent was any certificate or mention of such attempt in DC 35's pleadings. DC 35's Motion should be denied for failing to follow the rule.

## II. BACKGROUND

Clear Channel/Boston and DC 35 are signatories to a Collective Bargaining Agreement ("CBA") covering the wages, terms and conditions of employment for a select group of employees described in the CBA. On or about November 18, 2002, Operations Manager Gary Shay sent a letter to DC 35 Business Agent Charles Fogell enclosing copies of two (2) policies. (Fogell Aff. Para. 10). One policy was a Substance Abuse Program, the other was a Motor Vehicle Points System. *Id.* The Substance Abuse Program sought to create a safe workplace through random drug testing, as well as post-accident testing, and reasonable suspicion testing. The Motor Vehicle Points System sought to assure that employees operating Clear Channel/Boston vehicles were safe drivers, based on their state driving record. Both policies were a product of Clear Channel/Boston's insurance policies.

Mr. Fogell responded, by letter, on or about November 27, 2002, contesting the policies, purportedly rejecting the "proposal." (Fogell Aff. Para. 11).

On or about December 5, 2002, Mr. Shay wrote Mr. Fogell a letter explaining that the policies were not "proposals, but are existing policies." (Fogell Aff. Para. 12).

On or about December 16, 2002, Mr. Fogell wrote a letter to Mr. Shay taking the position that "implementation of these policies will be viewed as a unilateral change in the CBA ..." (Fogell Aff. Para. 3).

As scheduled, on January 1, 2003, Clear Channel's Substance Abuse Program and Motor Vehicle Points System went into effect.

On or about February 12, 2003, DC 35 filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging a unilateral change without bargaining.

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

2

(Fogell Aff. Para. 14). On April 28, 2003, the grievance was deferred to arbitration pursuant to the NLRB's *Collyer Insulated Wire* standard. *See* 192 NLRB 837 (1971). (Fogell Aff. Para. 15).

On or about May 19, 2003, over six (6) months after Mr. Shay's November 18, 2002 letter, DC 35 filed a grievance over the implementation of the policies. (Fogell Aff. Para. 16). Clear Channel/Boston entertained the grievance, agreeing, as a condition of deferment, to waive an argument surrounding the timelines of the grievance.

Approximately one year after Mr. Shay's November 18, 2002 letter, on or about November 7, 2003, DC 35 demanded arbitration with the American Arbitration Association over the grievance. (Fogell Aff. Para. 17).

Approximately one year later, on October 5, 2004, Arbitrator James S. Cooper heard the respective cases of the parties, including evidence and witnesses. (Fogell Aff. Para. 24).

On or about January 31, 2005, Arbitrator Cooper rendered the Opinion and Award concluding, in sum, that Clear Channel/Boston did not have the right, under the CBA, to implement the Substance Abuse Program or the Motor Vehicle Points System. (Fogell Aff. Para. 25).

At all times since January 1, 2003, the employees represented by DC 35 have been working under both the Substance Abuse Program and the Motor Vehicle Points System.

Clear Channel/Boston has petitioned to vacate the Opinion and Award of Arbitrator Cooper. Clear Channel/Boston has a good faith belief that Arbitrator Cooper's Opinion and Award is arbitrary, is not based in law, constitutes his own brand of industrial justice, and violates public policy.

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

3

## III. ARGUMENT

A. STANDARD OF REVIEW.

DC 35 misstates the applicable standard of review in this circuit when determining if an injunction is appropriate in the context of a labor dispute. The seminal case on this issue is *Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927 (1st Cir. 1988). In *Independent Oil*, the First Circuit recognized that the Norris-LaGuardia Act, 29 USC §§101 et. seq. strongly disfavors injunctions in the context of labor disputes. The *Independent Oil* court noted:

> The (Norris-LaGuardia) Act provides in pertinent part: No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to public policy declared in this chapter. 29 U.S.C. § 101.

864 F.2d 927 at fn. 1.

In order to obtain an injunction, DC 35 must demonstrate "first, that its grievance was arbitrable." 864 F.2d at 930 (citing *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 247-49, 90 S.Ct. 1583, 1590-92, 26 L. Ed. 2d 199 (1970). Once arbitrability is demonstrated, DC 35 has "the heavy burden of satisfying equitable criteria of irreparable harm and imbalanced hardships." *Id*. The court explained that the equitable criteria is: 1) the likelihood of success on the merits; 2) potentiality for irreparable injury; 3) a balancing of the relevant equities (most importantly the hardship of the nonmovement if the restrainer issues as contrasted with the hardship to the movement, if interim relief is withheld); 4) the effect on the public interest. *Id* at fn 3 (citing *Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 699 fn 2 (1st Cir. 1987); *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981).

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

4

Injunctions concerning labor disputes typically arise when an employer refuses to arbitrate a grievance that a union contends is arbitrable. Courts consider granting an injunction before the "harm" that the union demonstrates, and the employer refuses to arbitrate, occurs. An injunction is appropriate where the arbitration *process* is frustrated, not where the arbitration *remedy* is frustrated. In *Independent Oil*, the First Circuit explained:

> In an arena where collective bargaining is the preferred method of dispute resolution, the nation's labor policy counsels that district courts be chary about intruding into the field (internal citation omitted). Such caution is abundantly justified by the long, sometimes tragic history of premature judicial intervention in labor management controversies. ... Courts should intervene only when necessary to preserve the mechanisms of peaceful arbitration or when circumstances of imminent, irremediable threaten. (internal citations omitted).

The court further explained:

> The sole *raison d'etre* for the exception is to 'enforce' the obligation that the recalcitrant party fairly undertook under a specifically enforceable agreement **to submit disputes to arbitration**. *Boys Market Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 252-53, 90 S.Ct. 1583, 1593, 26 L. Ed. 2d 199 (1970); *Buffalo Forge Co. v. United Steel Workers*, 428 U.S. 397, 408, 96 S.Ct. 3141, 3148, 49 L. Ed. 2d 1022 (1976).

\*\*\*\*

> Because the exception cannot be allowed to engulf the rule, it must be tightly confined. Injunctions of this sort are, quite appropriately, a rarity. Unless some plain necessity exists, the escape hatch remains shut.

864 F.2d at 929. (emphasis added)

In the instant case, there is no dispute over the arbitrability of the issue; the case has already been arbitrated. The *Independent Oil* court further cautioned that courts must not interfere, by granting an injunction, unless the actions taken or threatened by one of the parties would render the outcome of any arbitration, which might follow, meaningless. 864 F.2d at 930

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

5

(citing *Local Lodge No. 1266, IAM v. Panoramic Corp.*, 668 F.2d 276, 282-82 (7th Cir. 1981); *Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217*, 554 F.2d 115, 123 (4th Cir. 1976).

The outcome of the instant arbitration is not meaningless; it is not yet determined. A preliminary injunction should be considered when the arbitration process is frustrated. In the instant case, the process has not been frustrated. The real issue raised by DC 35 is that the remedy is currently in dispute. A preliminary injunction is, therefore, not appropriate; traditional judicial remedies are appropriate. The limited exception for courts to grant injunctions in labor disputes is inapplicable to the instant case. The preliminary injunction should be denied.

### B.  LIKELIHOOD OF SUCCESS ON THE MERITS.

Arbitrator Cooper's decision is arbitrary and capricious. The Decision does not draw its essence from the terms of the CBA. Arbitrator Cooper's Decision demonstrated profound bias, and did not give due weight to clear provisions of the CBA. Despite the "19 page Decision" referenced by DC 35 in its Motion for Preliminary Injunction, Arbitrator Cooper performed a cursory analysis of the issues, imposed his personal beliefs of "fairness," and did not analyze Clear Channel/Boston's right to implement policies – the actual substance of the grievance.

Arbitrator Cooper further ignored the language of the CBA that compelled Clear Channel/Boston to create a safe work environment. Both policies addressed insurers concerns – contemplated by the CBA.

As a matter of public policy, the public, represented employees, and Clear Channel/Boston's insurers deserve a drug-free work place. Clear Channel/Boston employees operate Clear Channel/Boston vehicles throughout the greater Boston area. As a matter of public policy, Clear Channel/Boston has a duty to the public to assure that its employees, operating company vehicles, are safe and sober. Furthermore, Clear Channel/Boston has not run

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

6

roughshod over the CBA. The very terms of both policies state that when policy language conflicts with language in a CBA, the language of the CBA controls.

As a result, there is not a strong likelihood of success on the merits to warrant a preliminary injunction. Clear Channel/Boston has a good faith belief that it will prevail in its Petition to Vacate Arbitrator Cooper's Award. A preliminary injunction should not issue.

## C. DC 35 WILL NOT SUFFER IRREPARABLE INJURY.

It is unclear what irreparable injury DC 35 will suffer if a preliminary injunction does not issue. Clear Channel/Boston employees represented by DC 35 have been working under both the Substance Abuse Program and the Motor Vehicle Points System policy since January 1, 2003. Despite DC 35's grandiose statements to the contrary, Clear Channel/Boston's Petition to Vacate Arbitrator Cooper's Award does not render the arbitral process meaningless. The dispute is currently going through the arbitral process.

A preliminary injunction by its terms precedes an action. The action that DC 35 seeks to enjoin has already occurred, namely, the implementation of the Substance Abuse Program and the Motor Vehicle Points System. In *Newspaper Guild of Salem, Local 105 v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1277 (1st Cir. 1996), the First Circuit explained, "An appeal from a denial of a motion for a preliminary injunction is rendered moot when the act sought to be enjoined has occurred." (citing *CMM Cable Rep. Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 621 (1st Cir. 1995). No justiciable controversy exists where an appeal cannot serve to prevent the purported harm, and a court has no effective relief to offer. (Additional internal citations omitted). In *Oakville Dev. Corp. v. FDIC*, 986 F.2d 611, 613 (1st Cir. 1993), cited in *Ottoway Newspapers*, the First Circuit explained, "When the act sought to be enjoined actually

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

7

transpires, the court may thereafter be unable to fashion meaningful relief. In such straightened circumstances, the appeal becomes moot." 79 F.3d at 1277.

In *Ottoway Newspapers*, the Guild sought to enjoin the layoff of employees in the bargaining unit. The court explained, "Given that the action which the Guild sought to enjoin has already occurred, and that there is no reasonable expectation that Guild employees will be subject to the same action again, we dismiss the Guild's appeal from the denial of a motion for a preliminary injunction." 79 F.3d at 1278.

In the same way, Clear Channel/Boston has already implemented both the Substance Abuse Program and the Motor Vehicle Points System. Both policies have been in effect for over two (2) years. There is no expectation that Clear Channel/Boston will "re-implement" both policies. Any purported "harm" associated with implementing either policy has already occurred, and has occurred for over two (2) years.

It stands to reason that if DC 35 viewed the potential harm associated with implementing either of the two policies as a serious threat, it would have taken action sometime after November 18, 2002, but before January 1, 2003, to enjoin the policies' implementation. The case of *Int'l Bhd of Teamsters, Chauffeurs, Warehouseman and Helpers of Am, Local 251 v, Almac's Inc.*, 894 F.2d 464 (1st Cir. 1990), involved a union that filed a motion for preliminary injunction prior to an arbitration over the company's layoff of employees. In the face of a permanent shutdown, the court stated that the company's proposed shutdown "hardly means that the Union members are entitled to a preliminary injunction to rescue them from their own prophesized doom ... this is not a 'Humpty Dumpty' situation ... In the case at bar, all Almac's horses and all Almac's men *can* put the distribution center back into operation again." 894 F.2d at 466-67 (emphasis in original). The *Almac* court further explained that *Independent Oil*, supra,

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

8

stood for the proposition that "courts must not interfere (in labor disputes) unless the actions taken or threatened by one of the parties will render the outcome of any arbitration which would follow meaningless." *Id.* at 467. If a preliminary injunction is inappropriate when it is filed before an arbitration over permanent layoffs, then it is inappropriate in the instant case.

DC 35 makes great hay over a hypothetical situation where an employee tests positive and is terminated under a policy that is ultimately deemed inapplicable. (Mem. at 16). As explained by *Almac*, this is a situation that can be remedied.

DC 35's lamentations that employees would be embarrassed and humiliated by being subjected to a drug test, is unpersuasive. (Mem. at 15). Initially, as explained above, employees have been working under the policies for over two (2) years. Additionally, an employee who is disciplined for violating the Substance Abuse Program and the Motor Vehicle Points System is no more shamed than an employee who is disciplined for being late, incompetent, dishonest, or breaking a work rule. Purported damage to reputation is insufficient to enjoin Clear Channel/Boston from maintaining both the Substance Abuse Program and the Motor Vehicle Points System. *See Niagara Hooker Employees Union v. Occidental Chemical Corp.*, 935 F.2d 1370, 1379 (2nd Cir. 1991). (General embarrassment and damage to reputation insufficient to warrant an injunction for implementing random drug testing policy because the harm was no different than any other discipline for work rule violation.) In *Occidental Chemical Corp.*, the union sought to enjoin the unilateral implementation of a random drug-testing program before an arbitration on the issue. The Second Circuit recognized that the union had already agreed that the employer could drug test employees under a reasonable suspicion standard. *See* 935 F.2d at 1379. To that end, the union could not sustain its heavy burden of demonstrating harm necessary to warrant an injunction.

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

9

In the same way, as admitted by DC 35 in its Memorandum of Law in Support of its Motion for Preliminary Injunction, Clear Channel/Boston already tests DC 35-represented employees who possess a commercial drivers license. (Mem. at 14, 19). DC 35's arguments about invasions of privacy and humiliation are unpersuasive for the same reasons that the argument was unpersuasive in *Occidental Chemical Corp.*, in both instances, the union has accepted drug screening process for some of its represented employees.

The arbitration process is progressing. Clear Channel/Boston's Petition to Vacate is part of the arbitration process. An injunction should issue only when the arbitration process is rendered meaningless, i.e., when an employer, generally, refuses to arbitrate. Should Clear Channel/Boston's Petition to Vacate fail, the arbitration process will run its course, and any harm will be remedied. *Cf. Local Union No. 733 of the Int'l Bhd. Elec. Workers v. Ingalls Shipbuilding Division, Litton Systems, Inc.*, 906 F.2d 149, 152 (5th Cir. 1990)("The implementation of the drug testing program prior to the completion of arbitrations has not frustrated the arbitration process or rendered it meaningless.")

There is no irreparable harm, as alleged by DC 35. The policies have been in place for over two (2) years. The issue is progressing through the arbitration process. The request for a preliminary injunction should be denied.

### D. CLEAR CHANNEL/BOSTON WILL BE ADVERSELY EFFECTED IF A PRELIMINARY INJUNCTION ISSUES.

Granting a preliminary injunction will render Clear Channel/Boston's good faith appeal moot. The relief sought by DC 35 will be granted before Clear Channel/Boston has an opportunity to appeal Arbitrator Cooper's Decision. To the contrary, if the injunction is not granted, the status quo that existed before the Motion for Preliminary Injunction was sought will be the same. The employees represented by DC 35 have been working under both the Substance

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION, AND IN SUPPORT OF MOTION TO DISMISS

10

Abuse Program and the Motor Vehicle Points System for over two (2) years. The preliminary injunction should be denied.

### E.   GRANTING A PRELIMINARY INJUNCTION HARMS THE PUBLIC INTEREST.

As a matter of public policy, the preliminary injunction should not be granted. Clear Channel/Boston is committed to safety. The United States government has recognized the benefits of drug-free workplaces and enacted legislation to assure that contractors performing work for the government maintain a drug-free workplace. *See* 41 U.S.C. 701 et. seq. ("The Drug Free Workplace Act.") On April 7, 2005, the United States Department of Labor announced National Alcohol Screening day to raise awareness about the consequences of at-risk drinking. It bares noting that April is Alcohol awareness month. *See* U.S. Department of Labor, *What's New Item* (visited April 7, 2005) <http://www.dol.gov/asp/programs/drugs/said/whatsnew.asp?id=1723>.

Clear Channel/Boston has a duty to the public that shares the roads with employees operating Clear Channel/Boston vehicles during the workday. It is axiomatic that the public benefits from safe and sober Clear Channel/Boston employees. It is also axiomatic that Clear Channel/Boston employees, *and DC 35*, benefit from safe and sober employees. A safe and sober workplace is a laudable goal as recognized by DC 35 in its Memorandum (Mem. at 14), and one to which Clear Channel/Boston aspires.

Furthermore, as explained in *Occidental Chem. Corp.*:

> Because labor disputes frequently arise out of common management actions involving, for example, discipline, work-place rules, and production targets, implying a promise to maintain the status quo would permit unions to embroil the judiciary in day-to-day disputes. Management initiatives would be stifled, economic costs on the employer would mount, and its ability to run the business would be impaired.

935 F.2d at 1377. The interest to the public is best served by denying the preliminary injunction.

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION,
AND IN SUPPORT OF MOTION TO DISMISS

11

### F. THE ARBITRATION PROCESS IS WORKING.

Clear Channel/Boston and DC 35 agreed to submit disputes to arbitration for a resolution, rather than engaging in self-help (i.e. strikes and lock-outs). DC 35 is not without relief, absent a preliminary injunction. Quite the contrary, DC 35 has the resources of this court to uphold the Arbitrator's Decision, if Clear Channel/Boston cannot carry its burden in its Petition to Vacate.

The arbitration process is working. Clear Channel/Boston agreed to waive a timeliness argument to arbitrate the grievance. The arbitration process has not been frustrated; a preliminary injunction is unnecessary and inappropriate.

Nowhere in the CBA was there an agreement that Clear Channel/Boston would maintain the status quo during an arbitration. DC 35 has made no such contention. DC 35 could have bargained for such a clause in the CBA. *See Ingalls Shipbuilding*, 906 F.2d at 151. (Court affirmed District Court's denial of injunction, pending arbitration, in part, because agreement between company and union did not include any duty to preserve the status quo.); *see also Occidental Chem. Corp.*, 935 F.2d at 1377 (same). In the instant case, the preliminary injunction should be denied.

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION, AND IN SUPPORT OF MOTION TO DISMISS

12

### III. CONCLUSION

WHEREFORE, for any and all of the reasons explained above, Clear Channel/Boston respectfully opposes DC 35's Motion for Preliminary Injunction.

Dated: April 8, 2005.

        Respectfully Submitted,
        The Plaintiff,
        Clear Channel Outdoor, Inc.,
        By its counsel,

        */s/ George A. Berman*
        George A. Berman, Esq., BBO No. 040200
        Marjunette deMagistris, Esq., BBO No. 648133
        Peabody & Arnold LLP
        30 Rowes Wharf
        Boston, MA 02110
        (617)951-2100
        Fax: 617-951-2125

**AND**

        */s/ Glenn Plosa*
        L. Michael Zinser
        Glenn E. Plosa
        THE ZINSER LAW FIRM, P.C.
        150 Second Avenue North
        Suite 410
        Nashville, TN 37201
        Telephone (615) 244-9700
        Facsimile (615) 244-9734

PLAINTIFF'S-APPELLANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION, AND IN SUPPORT OF MOTION TO DISMISS

13

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing PLAINTIFF-APPELLANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION, AND IN SUPPORT OF MOTION TO DISMISS was delivered to the following via ~~hand delivery~~ USPS, this 8th day of April 2005.

> John Conti
> FEINBERG, CAMPBELL & ZACK, P.C.
> 177 Milk Street
> Boston, MA 02109

Marjunette deMagistris

PABOS2:MDEMAGI:612244_1
14819-91143