UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CLEAR CHANNEL OUTDOOR, INC., Boston Division | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 05-CV-10380 WGY |
| INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL-CIO, CLC, DISTRICT COUNCIL 35, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Defendant Painters and Allied Trades District Council No. 35 (hereinafter "DC35" or "Defendant"), hereby files its Reply Memorandum of Law in support of its Motion for a Preliminary Injunction enjoining Defendant Clear Channel Outdoor (hereinafter "Clear Channel or Plaintiff") from continuing to enforce the Drug and Alcohol Control Program and Motor Vehicle Points System that Arbitrator James S. Cooper declared null and void *ab initio*, pending this Court's decision on the merits of the parties' respective motions to vacate and enforce the award.

## I.    Standard of Review.

Contrary to Plaintiff's claim in its Memorandum in Opposition, the proper standard for determining whether preliminary injunctive relief is appropriate is that stated by the First Circuit in *Boston Celtics Limited Partnership v. Shaw*: 1) has the moving party shown a likelihood of success on the merits; 2) will the moving party suffer

irreparable harm if the injunction is not granted; 3) does the "balance of harms" favor the moving party of the nonmoving party; and 4) will granting the injunction harm the "public interest?" 908 F.2d 1041, 1048 (1st Cir. 1990).

In *Shaw*, the Boston Celtics sought to enforce an arbitration award issued pursuant to the collective bargaining agreement, and specifically asked the court for "expedited enforcement" of the award and for a preliminary injunction. In reviewing the District Court's granting of the injunction, the First Circuit held that

> well-established public policy embodied in statute . . . and in numerous lower court opinions, strongly favors judicial action to 'effectuate . . . the means chosen by the parties for settlement of their differences under a collective bargaining agreement . . .' **That judicial action may include a preliminary injunction enforcing an arbitration award   . . . even if such a preliminary injunction gives the plaintiff all the relief it seeks.** *Id.* at 1047-1048.

The Court then stated that the "only legal question before [it]" was whether the District Court acted outside its powers in issuing the preliminary injunction. "That is to say, did the court improperly answer the four questions judges in this Circuit must ask when deciding whether to issue a preliminary injunction." *Id.* at 1048. The Court then listed the above four factors.

As *Shaw* involved a case with similar facts to those present here, in that a party to a collective bargaining agreement sought a preliminary injunction in connection with the enforcement of an arbitration award, the four-part test set forth in that case is the appropriate pursuant to which this Court should rule on Defendant's Motion for a Preliminary Injunction.

Plaintiff's citation to *Independent Oil and Chemical Workers of Quincy, Inc. v. Proctor & Gamble Manufacturing Company*, 864 F.2d 927 (1st Cir. 1988), is misplaced. *Independent Oil*, a case that preceded *Shaw*, involved a situation in which a union sought

a preliminary injunction to prohibit the employer from making changes in rules governing work shifts, safety, and employee dress, **_pending arbitration_**. The Court therefore applied the standards of the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.*, since "the *raison d'etre* for the exception is to 'enforce the obligation that the [recalcitrant party] freely undertook under a specifically enforceable agreement to submit disputes to arbitration.'" *Id.* at 929, quoting *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 252-253 (1970). Thus, the Court first looks, under such a standard, at whether the grievance was arbitrable. *Id.*

Here, however, the arbitrability question need not be answered, as evidenced by the fact that the parties voluntarily agreed to arbitrate the issue of whether the implementation of the Drug and Alcohol Control Program and the Motor Vehicle Points System violated the collective bargaining agreement. There is no issue of arbitrability, as the parties have already arbitrated the matter. There is thus no on-going "labor dispute" between the parties as that term is used under the Norris-LaGuardia Act. The labor dispute ended upon the issuance of Arbitrator Cooper's award.

The Defendant is simply attempting to enforce an arbitration award and compel the Plaintiff to abide by that award pending this Court's decision on the merits. As the First Circuit stated in *Independent Oil*, courts must not interfere unless the actions taken or threatened by one of the parties would render the outcome of **_any arbitration which would follow_** meaningless." *Id.* at 467 (Emphasis added). Here, the arbitration hearing is not pending, but rather has already occurred. Therefore, this Court only need answer "the four questions judges in this Circuit must ask when deciding whether to issue a preliminary injunction," i.e., whether the Defendant has shown 1) a likelihood of success

3

on the merits; 2) that failure to issue the injunction would cause DC 35 "irreparable harm;" 3) whether the "balance of harms" favors Defendant DC35 or Plaintiff; and 4) whether granting the injunction will harm the "public interest." *Boston Celtics Limited Partnership v. Shaw*, 908 F.2d 1041, 1048 (1st Cir. 1990).

Nonetheless, Plaintiff claims, without any support whatsoever, that "an injunction is appropriate where the arbitration ***process*** is frustrated, not where the arbitration ***remedy*** is frustrated." (Emphasis in original).[1]  Plaintiff creates this purported legal principal out of whole cloth, however.  There is nothing in the First Circuit's *Independent Oil* decision that even remotely stands for such a proposition.  The fact that the only cases Plaintiff cites in support of its position involved situations in which a party was seeking an injunction prior to an arbitration hearing, does not mean that an injunction may not be issued in conjunction with an action to enforce an arbitration award.  *Boston Celtics Limited Partnership v. Shaw* clearly repudiates any such notion.

Nonetheless, even assuming, *arguendo,* that the proper standard of review is that found in *Independent Oil,* Defendant still meets the requirements for a preliminary injunction.  First, there is no dispute that the grievance presented to Arbitrator Cooper is arbitrable.  Once this hurdle is overcome, then the remaining questions are:

> (1) Likelihood of success on the merits; (2) potentiality for irreparable injury; (3) a balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and (4) the effect on the public interest . . . In the *Boys Markets* environment, arbitrability replaces the fourth factor entirely, and tends to preempt the first. *Independent Oil,* 864 F.2d 927, 930 n.3.

---

[1]    Plaintiff-Appellant's Memorandum in Opposition to Defendant's Motion for Preliminary Injunction, p. 5.

A        Defendant Has a Strong Likelihood of Success on the Merits.

As noted in Defendant's initial Memorandum of Law, Defendant has a strong likelihood of success on the merits. Not only is "judicial review of an arbitration award . . . among the narrowest known to law,"[2] but, as fully explained in Defendant's initial Memorandum of Law, Arbitrator Cooper issued a nineteen-page decision founded in reason and fact that drew its essence from the collective bargaining agreement. As Arbitrator Cooper ruled, Articles 17 and 20 of the parties' collective bargaining agreement already address the issues covered in the unilaterally implemented Drug and Alcohol Control Program and Motor Vehicle Points System. The collective bargaining agreement, according to its terms, represents the parties' entire agreement on these issues, and the unlawfully implement policies, as Arbitrator Cooper found, were not reasonable work rules, but rather material changes in the employees' terms and conditions of employment.

B.        Defendant Will Suffer Irreparable Harm if an Injunction is Not Issued.

Clear Channel's position, as set forth in its Memorandum in Opposition, appears to be that the action which DC35 seeks to enjoin- the implementation of the Drug and Alcohol Control Program and the Motor Vehicle Points System- has already occurred. While it is true that Clear Channel implemented these policies effective January 1, 2003, the policies continue to be enforced. Thus, Defendant does not seek to enjoin one act; rather, Defendant seeks to enjoin Plaintiff from committing the same violation over and over again. Each time Defendant subjects an employee to a drug test, or disciplines an employee pursuant to either of the voided policies, Defendant's members suffer harm.

---

[2]    *Coastal Oil of New England, Inc. v. Teamsters Local Union No. 25*, 134 F.3d 466, 469 (1st Cir. 1998).

An injunction cannot undo a drug test that an employee has already been unlawfully forced to endure, but it can prevent Plaintiff from drug testing that same employee again, or a different employee. It also prevents further invasions of privacy and curbs the potential for employee shame and humiliation. This is not a situation where the harm sought to be prevented has occurred once and will never occur again; it is a repeated harm each and every time Plaintiff drug tests an employee, or disciplines an employee pursuant to alleged violations of either policy.

Numerous courts have found that a union was so irreparably harmed by the unilateral implementation of a drug testing program as to require the issuance of a preliminary injunction pending arbitration. In *Oil, Chemical and Atomic Workers International Union, AFL-CIO, Local 2-286 v. Amoco Oil Company,* 885 F.2d 697 (10th Cir. 1989), the Tenth Circuit examined an employer's unilateral implementation of a drug testing policy that provided for four different types of testing. The Court first held that the "implementation of a drug testing program is qualitatively different than the existence of policies against the use and possession of drugs in the workplace." *Id.* at 707. The Court, in holding that the testing program would cause irreparable harm, found that the tests resulted in the "potential for stigmatization and humiliation of its employees," and that the ' consequences of revelations about drug or alcohol abuse could have long term consequences." *Id.* The Court therefore concluded that "the invasion of privacy, stigmatization, and humiliation alleged by the Union constitute irreparable injuries" that warranted a preliminary injunction. *Id.*

Similarly, in *Communications Workers of America v. U.S. West Communications,* 744 F.Supp. 1031 (D.Col. 1990), the Court found that a union would be irreparably

harmed by the implementation of a drug testing program. The Court held that while an arbitrator may award backpay and reinstatement, "drug and alcohol testing is exceptionally intrusive and potentially invidious." *Id.* at 1033-1034. In rejecting the employer's argument that the circumstances in the Tenth Circuit's decision in *Amoco* rendered that decision distinguishable, the Court stated, "the extraordinary invasive qualities inherent in any drug and alcohol testing program, however, render situational variations insignificant." *Id.* at 1034.

Other courts have similarly ruled that unilaterally implemented drug testing programs constitute irreparable injury to unions warranting injunctive relief for the same reasons. See: *Graphic Communications Union Local 17(M) v. Stone Container Corporation,* 1988 U.S. Dist. LEXIS 11426 (S.D. Ind.) (April 6, 1988) ("Drug testing by urinalysis invades not only an employee's bodily integrity, but also his or her legitimate expectation of privacy as to the chemical content and disposal of urine. Because urinalysis can yield positive results even weeks after drug use and necessarily discloses much additional personal information about an employee's personal life . . . such testing accomplishes a significant intrusion into an employee's off-duty personal life which has been recognized as an invasion of privacy"); *United Steelworkers of America v. USS, A Division of USX Corporation,* 1989 U.S. Dist. LEXIS 3246, 130 L.R.R.M. 3089 (E.D. Penn. 1989) (Irreparable harm found based upon the "humiliation, embarrassment, and loss of privacy [the employees] would experience from being forced to submit to such [drug] tests."); *Stove, Furnace and Allied Appliance Workers' International Union, Local 185 v. Weyerhaeuser Paper Company,* 650 F.Supp. 431, 433 (S.D.Ill. 1986) (Finding that

the drug testing program proposed by the employer would cause an invasion of privacy and a potential "black mark" on union members' work records and reputations.).

Plaintiff's reliance on *Niagara Hooker Employees Union v. Occidental Chemical Corporation*, 935 F.2d 1370 (2nd Cir. 1991), is misplaced. Part of the reason for the Court's ruling was that the union in that case had already accepted a "reasonable suspicion" testing program. *Id.* Here, the only testing of union members involves those who have commercial driver's licenses. Those employees are tested as required under federal law pursuant to the Department of Transportation's regulations. The testing here is not the result of any kind of negotiated term of the collective bargaining agreement, however. In any event, the testing Plaintiff has unilaterally imposed and which Arbitrator Cooper voided, involves employees who had not previously been tested prior to the unilateral implementation of the Drug and Alcohol Control Program. The employees involved here are not required by law (or by the collective bargaining agreement) to be tested. The new program therefore subjects employees to various forms and types of drug testing when previously they were subjected to no such testing whatsoever. While the collective bargaining agreement forbids using or possessing alcohol or illegal drugs on company time and reporting to work under the influence, there is no provision for drug testing.

Thus, Defendant's members will suffer irreparable harm if they continue to be subject to the Plaintiff's invasive drug testing program. Although Clear Channel did implement the Drug and Alcohol Control Program effective January 1, 2003, Arbitrator Cooper found that Plaintiff violated the collective bargaining agreement by doing so, and declared the policy (along with the Motor Vehicle Points System), null and void. The

fact that the Clear Channel has been violating the collective bargaining agreement and violating the privacy rights of bargaining unit members since that time does not entitle Clear Channel to continue those violations by flaunting Arbitrator Cooper's decision. Each time an employee is forced to submit to a drug test, under any of the ten different types of testing the program entails, that employee is irreparably harmed. Thus, Defendant clearly can establish irreparable harm worthy of the issuance of a preliminary injunction pending this Court's decision on the merits.

C.   Clear Channel Will Not be Adversely Affected if a Preliminary Injunction Issues.

Plaintiff offers no evidence whatsoever that it would be harmed by a preliminary injunction. Clear Channel's sole argument appears to be that because it has been utilizing the Drug and Alcohol Control Program as well as the Motor Vehicle Points System for the past two years, it will suffer harm if it is not allowed to continue to do so while this case is pending. Just what that harm is, however, remains a mystery. The collective bargaining agreement contains provisions addressing drug and alcohol abuse and safe driving, and those provisions were sufficient for the parties prior to Clear Channel's unilateral implementation of the new policies. The suspension of those policies, and a return to the manner in which these issues were addressed prior to January 1, 2003, would not adversely harm Plaintiff.

D.   Granting a Preliminary Injunction Will Not Harm the Public Interest.

Notwithstanding that Clear Channel is committed to safety, that April is apparently "Alcohol Awareness Month," and that workplace safety is a laudable goal, those ideals do not trump the public interest that favors the enforcement of arbitration awards rendered pursuant to collective bargaining agreements. "The public interest in the

9

prompt and peaceful resolution of labor disputes through arbitration is served by issuance of a preliminary injunction." *Graphic Communications Union Local 17(M) v. Stone Container Corporation,* 1988 U.S. Dist. LEXIS 11426 (S.D. Ind.) (April 6, 1988).

In *Oil, Chemical and Atomic Workers International Union, AFL-CIO, Local 2-286 v. Amoco Oil Company,* 885 F.2d 697 (10th Cir. 1989), the employer argued that the public interest would be harmed by an injunction enjoining its drug testing program pending arbitration because "both federal and state policy favor drug testing." *Id.* at 709, n.18. The Court responded to this argument, however, by noting that "Amoco's argument fails to mention another important, and, in this instance, countervailing policy consideration: the peaceful resolution of labor disputes through voluntary arbitration." *Id.*

In addition, there is also a public interest in protecting individual privacy issues that arise in conjunction with drug testing. "'Drugs are, of course, properly prohibited from the workplace' . . . But simply because [an employer's] faith is good does not mean that I may permit them to ride roughshod over the privacy rights of Union members." *United Steelworkers of America v. USS, A Division of USX Corporation,* 1989 U.S. Dist. LEXIS 3246, 130 L.R.R.M. 3089 (E.D. Penn. 1989).

Thus, a preliminary injunction supports the public interest in seeing the resolution of labor disputes through arbitration, as well as the public interest in employee privacy rights.

## II.    Conclusion.

For all of the foregoing reasons, and on the record as a whole, the Court should grant Defendant's Motion for a Preliminary Injunction pending the Court's decision on the merits.

Respectfully submitted,

For the Defendant,
Painters and Allied Trades
District Council No. #35
By its Attorney,

Jonathan M. Conti
BBO # 657163
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

DATED: April _____, 2005

## CERTIFICATE OF COMPLIANCE

I, Jonathan M. Conti, hereby certify that pursuant to Local Rule 7.1, I have

conferred in good faith with counsel of record in this matter.

Jonathan M. Conti

## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, hereby certify that I caused a copy of the foregoing
document to be served in hand upon George A. Berman, Esq., Peabody & Arnold, LLP,
30 Rowes Wharf, Boston, MA 02110 and via overnight mail to Glenn E. Plosa, Esq., The
Zinser Law Firm, P.C., 150 Second Avenue North, Suite 410, Nashville, TN 37201.

Jonathan M. Conti

April _____, 2005

11