UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., Boston Division,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL-CIO, CLC, DISTRICT COUNCIL 35,<br><br>Defendant. | C.A. No. 05-CV- 10380 WGY |

## SUPPLEMENTAL AFFIDAVIT OF CHARLES E. FOGELL

I, Charles E. Fogell, under oath and based upon my personal knowledge, hereby depose and state the following:

1. My name is Charles E. Fogell and I am employed by Painters and Allied Trades District Council No. 35 (hereinafter referred to as "DC35"). I have held the position of Business Representative with the Union since approximately 1990. The Union's office address is 25 Colgate Road, Roslindale, Massachusetts.

2. As a Business Representative, my responsibilities include negotiating collective bargaining agreements, policing those agreements, and filing and processing grievances on behalf of bargaining unit employees and DC35.

3. DC 35 represents construction and bill posting department employees at Clear Channel Outdoor's ("Company") facility in Stoneham, Massachusetts.

4. I have been DC35's bargaining representative for the employees at Clear Channel, or its predecessors, since approximately 1990.

5. The Drug and Alcohol Control Program unilaterally implemented by Clear Channel Outdoor and attached to my initial Affidavit as Exhibit B, applies to all regular full-time employees and contains ten different types of drug testing, as well as unannounced searches.

6. The Drug and Alcohol Control Program provides for the random drug testing of all employees. (Exh. B, pp. 0.10-0.11). A refusal to cooperate with random testing results in termination from employment and a positive test result is considered cause for termination. The random testing is conducted at a "frequency determined by" the Company, and the Company has the right to increase or decrease the frequency of testing at any time. (Exh. B, p.0.10-0.11).

7. The Drug and Alcohol Control Program provides for "Unannounced group or area testing", whereby the Company may randomly select work groups, classifications, or areas for testing. In addition, "Unannounced/unscheduled testing" may be performed on any safety-sensitive employee. (Exh. B, pp. 0.11-0.12).

8. The Drug and Alcohol Control Program provides for "Reasonable Suspicion Testing" when the Company "determines, in its sole discretion, that reasonable suspicion . . . exists" that an employee has engaged in activities prohibited by the policy. (Exh. B, pp. 0.12). Factors that establish reasonable suspicion include excessive absenteeism and deteriorating job performance "as determined by the Company," and an on-the-job accident or "near miss" which is "unexplained and having suspicious circumstances." (Exh. B, pp. 0.12).

9. The Drug and Alcohol Control Program includes post-treatment testing, as well as "Return to Duty Testing", in which "any employee returning to work after an

extended absence" may be required to submit to a "fitness for duty evaluation and drug/alcohol testing before being allowed to begin working." (Exh. B, pp. 0.12-0.13). In all forms of testing, the Company is authorized to not only take a urine sample, but also blood, saliva, hair, or other possible options. (Exh. B, p. 0.9-0.10).

10. The Drug and Alcohol Control Program includes "post-accident vehicle testing", in which all employees who are involved in an accident while operating a Company vehicle or equipment are required to take a drug and alcohol test. (Exh. B, p.0.10).

11. The Drug and Alcohol Control Program provides for "post-accident injury testing", whereby an employee involved in an on-the-job accident that causes injury will be required to be tested. The policy also requires testing for all employees involved in an on-the-job accident resulting in property damage or loss over $1,000. (Exh. B, p.0.10).

12. The Drug and Alcohol Control Program authorizes the Company to conduct "Contraband Inspections" pursuant to which "the Company may conduct unannounced inspections for illegal drugs, firearms, weapons, or any other item classified as 'contraband' by the Company." (Exh. B, pp. 0.5, 0.9). Inspections of employees and their personal property, including personal vehicles, lockers, and lunch packs, may also be conducted when there is reasonable suspicion present, and such inspection may also be done "when circumstances or workplace conditions justify them." ( Exh. B, p. 0.9).

13. The Drug and Alcohol Control Program also provides that such searches may be "initiated without prior notice" and may be conducted "at times and locations deemed appropriate by the Company." The Company also has the right to "utilize scent trained canines and handlers" to inspect contraband. (Exh. B, p.0.9).

14. The Drug and Alcohol Control Program establishes a disciplinary program which gives the Company the authority to terminate individuals who engage in any of the prohibited activities. For example, a refusal to submit to a test is considered a positive test and is grounds for immediate discharge. (Exh. B, p.0.6). An employee's refusal to consent to a contraband inspection may result in discipline, up to and including termination, even for a first time refusal. (Exh. B, p. 0.5).

15. The Motor Vehicle Point Systems requires employees to submit to a review of their driving records, from which a driving report is subsequently generated. (Exh. B, p.1.1). Once the report is completed, the Company totals the points assessed for each infraction to determine whether the employee will be allowed to operate a motor vehicle in the course of his employment. (Exh. B, p.1.1).

16. If an employee has neared the point where driving privileges might be suspended, the Company will issue a caution letter. (Exh. B, p.1.1). If the employee exceeds the allotted points, driving privileges will be suspended and a letter of suspension sent. If an employee is required to drive as part of his job, his employment may be terminated under the policy if alternate methods of satisfying the requirement cannot be found. (Exh. B, pp.1.1-1.2).

SIGNED UNDER THE PENALTIES OF PERJURY THIS __19th__ DAY OF APRIL, 2005.

_____
Charles E. Fogell