UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, INC., Boston Division<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL-CIO, CLC, DISTRICT COUNCIL 35,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 05-CV-10380 WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S BENCH MEMORANDUM AND IN SUPPORT OF DEFENDANT'S COUNTERCLAIM TO ENFORCE THE ARBITRATION AWARD

Defendant Painters and Allied Trades District Council No. 35 hereby files this Memorandum of Law in Support of its Counterclaim to Enforce the Arbitration Award issued by Arbitrator James S. Cooper on January 31, 2005, wherein he declared Plaintiff's Drug and Alcohol Control Program and Motor Vehicle Points System to be null and void *ab initio*.[1]

---

[1]   On April 29, 2005, Defendant Painters and Allied Trades District Council No. 35 and Plaintiff Clear Channel Outdoor, Inc., orally argued their respective positions before the Court concerning whether Arbitrator James S. Cooper's Arbitration Award should be enforced or vacated. Prior to the oral hearing, Plaintiff submitted a "Bench Memorandum" in support of its position.

On May 2, 2005, Plaintiff informed the Court, pursuant to the discussion held at the April 29 hearing, that it would agree to a thirty-day suspension of both the Drug and Alcohol Control Program and the Motor Vehicle Points System pending the Court's decision on whether to enforce or vacate Arbitrator Cooper's Award. The parties agreed that Plaintiff would have until May 13, 2005, to supplement its Bench Memorandum, and that Defendant would be provided until May 20, 2005, to submit a Memorandum of Law in Response to Plaintiff's Bench Memorandum.

The Award should be enforced because the standard of review of arbitration awards is extremely narrow, and because Arbitrator Cooper interpreted the terms of the collective bargaining agreement, issued an award within the essence of the agreement, and acted within the scope of his authority. Lastly, Arbitrator Cooper's Award violates no explicit, well-defined, and dominant public policy that requires that it be vacated.

**I.  Arbitrator Cooper's Award is Wholly Enforceable.**

   A.  <u>Standard of Review.</u>

It is well established that "'judicial review of an arbitration award is among the narrowest known to the law.'" *Coastal Oil of New England, Inc. v. Teamsters Local Union No. 25*, 134 F.3d 466, 469 (1st Cir. 1998), quoting *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989). "'So far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his.'" *Dorado Beach Hotel Corporation v. Union de Trabajadores De La Industria Gastronomica de Puerto Rico Local 610*, 959 F.2d 2, 4 (1st Cir. 1992), quoting *Bacardi Corp. v. Congreso de Uniones Industriales,* 692 F.2d 210, 211 (1st Cir. 1982). "Rather, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, [even the fact] that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.*, quoting *Georgia Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 944 (1st Cir. 1988).

Aside from a claim that an arbitration award is against "an explicit, well-defined, and dominant public policy . . . the scope of review is limited to claims that the arbitrator's decision is: '(1) unfounded in reason and fact; (2) based on reasoning so

palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Coastal Oil of New England, Inc. v. Teamsters Local Union No. 25*, 134 F.3d 466, 469 (1st Cir. 1998), quoting *Local 1445 United Food and Commercial Workers Int'l Union v. Stop & Shop Cos.,* 776 F.2d 19, 21 (1st Cir. 1985).

      B.    <u>Arbitrator Cooper Issued an Enforceable Award that Draws its Essence from the Agreement</u>.

Arbitrator Cooper issued an extensive, nineteen-page decision in which he found that the Drug and Alcohol Control Program and the Motor Vehicle Points System conflicted with the terms of the collective bargaining agreement, and were therefore null and void, *ab initio*. Contrary to Clear Channel's assertions, the award is based upon Arbitrator Cooper's interpretation of the clear language of the parties' collective bargaining agreement.

In reaching his decision, Arbitrator Cooper first noted that drug and alcohol testing of current employees, as well as an employee's ability to safely drive an employer-owned vehicle, are terms and conditions of employment that must be collectively bargained on demand. Arbitrator Cooper then examined the language of the collective bargaining agreement, and determined that the parties had bargained over these issues when they negotiated the current agreement.

Arbitrator Cooper noted that Article 6, the Management Rights clause, provides Clear Channel with the right to "promulgate and enforce all reasonable rules relating to safety, operations, and other matters ***not inconsistent with the terms of this Agreement***." (Emphasis added). Article 17 further states that Clear Channel "shall have the right to

post reasonable rules and regulations *provided they are not in conflict with the terms of this Agreement.*" (Emphasis added).

Arbitrator Cooper than looked to Article 20 of the Agreement, which deals with drug and alcohol abuse. Article 20, Section 1, states:

> Alcoholism and drug abuse and emotional illness are to be recognized by the EMPLOYER as health problems and are to be treated by the parties as any other disease, provided the employee accepts assistance. However, the EMPLOYER shall have the right to terminate an employee so afflicted who refuses to acknowledge such a health problem and accept assistance, or who has received assistance for two treatments after the effective date of this Agreement and yet continues to demonstrate signs of active alcoholism or substance abuse. Provided such a health problem significantly impairs such an employee's work performance and the UNION is satisfied that the employee was made aware of his condition and refused assistance, the UNION shall not challenge the EMPLOYER'S termination of such an employee. Any employee shall have the right to refuse to work with another employee who is under the influence of alcohol or drugs.

Arbitrator Cooper then determined that the new Drug Policy was not consistent with Article 20 of the Agreement, noting that Article 20 treats alcoholism and drug abuse as an "emotional illness", and that they are punishable by termination only if the employee refuses treatment or has previously received "two treatments" without success.

Arbitrator Cooper contrasted the language in the collective bargaining agreement negotiated by AK Media with that found in Clear Channel's Drug and Alcohol Control Program, and found the two to be in conflict. Arbitrator Cooper noted that the Drug and Alcohol Control Program imposed numerous types of drug testing requirements on the employees that were never previously present; provided for "unannounced" searches of employees and their personal property for "contraband;" and gave the Company discretion to determine when "reasonable suspicion" exists to demand a drug test.

Arbitrator Cooper also noted that while Article 20 provides an employee who returns to work following treatment with a second opportunity for treatment before the Company may terminate him, the Drug and Alcohol Control Program requires that same employee to first pass a test showing "'no detectable amount of a substance prohibited by the policy;'" to participate in a drug and alcohol testing program under the Company's direction; and to agree to a signed letter accepting "'new terms of continued employment.'"

With respect to the employee safe driving issue, Arbitrator Cooper compared the Motor Vehicle Points System with Article 17 of the Agreement. Arbitrator Cooper interpreted Article 17 as providing the Company with the right to prohibit an employee from driving only where either Clear Channel's insurance carrier demands that the Company prohibit the employee from driving, or if an employee's driver's license has been suspended.

Continuing the same analysis as he did with respect to the drug and alcohol issue, Arbitrator Cooper than examined the Motor Vehicle Points System to see if it was consistent with the terms of the collective bargaining agreement. Arbitrator Cooper found that in contrast to Article 17, the Motor Vehicle Points System prevents an employee from driving unless he meets Clear Channel's subjective evaluation of the employee's driving record, regardless of whether the Company's insurance carrier demands that the individual be removed, and regardless of whether or not the employee's driver's license has been suspended. Cooper also noted that the Motor Vehicle Points System also provides for termination of an employee if he is required to drive as part of his assignment and "alternate methods of satisfying the requirement cannot be found."

Arbitrator Cooper found that since most of Clear Channel's bargaining unit employees are required to drive as part of their work assignment, the Motor Vehicle Points System could result in an employee's termination.

Arbitrator Cooper contrasted this with Article 17, which provides that the Company's focus in situations where an employee must be removed from a driving position is in keeping the employee on the job by finding a way to assign such an employee to a non-driving assignment, the Motor Vehicle Points System contains no language requiring Clear Channel to "seek alternative assignments on the enforcement of the Point System." (Cooper Award, 18).

Lastly, Arbitrator Cooper interpreted Article 45 of the Agreement and, based upon its language, ruled that AK Media had had a full opportunity to bargain about the issues in the Agreement, and unqualifiedly waived its right to bargain with respect to "any matter referred to or covered in" the collective bargaining agreement. (Cooper Award, 19). Arbitrator Cooper found that the issues of drug abuse, alcoholism, and employee use of motor vehicles were already addressed in the collective bargaining agreement in Articles 17 and 20. In addition, Arbitrator Cooper noted that even if Articles 17 and 20 did not address these issues, AK Media waived its right to bargain because Article 45 states that AK Media's waiver includes "'any subject or matter *not* specifically referred to or covered by this Agreement, even though subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement." (Emphasis added) (Cooper Award, 19).

Finally, after analyzing the two policies in conjunction with the terms of the collective bargaining agreement, Arbitrator Cooper reached the conclusion that not only were the policies inconsistent with the Agreement, but they were not "reasonable work rules" under the terms of the Management Rights Clause at all, but rather constituted "total and complete changes in the employees' terms and conditions of employment." (Cooper Award, 19). Arbitrator Cooper noted that the collective bargaining agreement provision which permits Clear Channel to issue work rules "does not provide the Company with permission to drastically change the requirements of the Agreement." (Cooper Award, 18).

Arbitrator Cooper therefore issued a decision that drew its essence from the collective bargaining agreement by correctly ruling that the Drug and Alcohol Control Program and the Motor Vehicle Points System were null and void *ab initio*.

    C.    <u>Arbitrator Cooper's Award is Free of Bias and Is Not Based on His Own Brand of Industrial Justice</u>.

Plaintiff's Bench Memorandum amounts to nothing more than an attempt to twist, misinterpret, and misrepresent Arbitrator Cooper's Award in hopes that it resembles the arbitrator's award that was vacated by the Third Circuit in the case of *Citgo Asphalt Refining Co. v. Paper, Allied, Industrial, Chem. and Energy Workers Int'l Union Local 2-991,* 385 F.3d 809 (3rd Cir. 2004). Not only is *Citgo* not a First Circuit decision, but it is completely inapposite to the situation here.

In *Citgo,* the union filed two grievances. The first alleged that the employer's new drug and alcohol policy was improperly implemented, and the second contended that the employer's implementation of the policy was totally "unreasonable". The parties therefore submitted the following issue to the arbitrator:

>Did Citgo violate Article XXX of the Labor Agreement by improperly implementing its National Substance Abuse Policy at the Paulsboro facility on October 1, 1999? If not, was the policy unreasonable.

The arbitrator in *Citgo* found that there had been **no contractual breach** by Citgo with respect to its unilateral adoption and implementation of the substance abuse program. Thus, unlike Arbitrator Cooper, who found that the Drug and Alcohol Control Program and the Motor Vehicle Points System were not reasonable work rules under the management rights clause, and, in any event, were inconsistent with the terms of Articles 17 and 20 and barred by Article 45, the arbitrator in *Citgo* found nothing in the contract that prohibited Citgo from implementing its drug policy.

The arbitrator in *Citgo* also found that the mandatory, random testing procedure was both proper and reasonable, but held that the zero tolerance aspect of the policy was unreasonable. The Third Circuit took issue with this finding, however, because the collective bargaining agreement provided that the arbitrator "shall not substitute his judgment for that of the Company in the absence of a clear abuse of discretion."

The Third Circuit therefore held that after finding that the implementation of the policy did not violate the agreement, the arbitrator, in determining whether the policy was reasonable, was limited to determining, pursuant to the terms of the collective bargaining agreement, that the policy was unreasonable only if he found it to be a "clear abuse of discretion" by the employer. The Third Circuit noted, however, that the arbitrator never ruled that the implementation of the policy constituted an abuse of discretion. Instead, he found that one aspect of that policy, the zero tolerance approach, was not reasonable because he "did not believe that giving an employee a second chance was inconsistent with Citgo's goal of having the best safety record in the industry."

Thus, it is no surprise that the Third Circuit found the arbitrator's award to have been based solely on general considerations of fairness and equity, and not on the terms of the collective bargaining agreement. The arbitrator in *Citgo* found that there was ***nothing in the collective bargaining agreement*** that prohibited the employer from implementing the drug policy. He also found no abuse of discretion in the policy's implementation, but nonetheless found it to be measurable in one aspect (the zero tolerance provision).

Here, however, Arbitrator Cooper rendered a decision that concluded that the unilateral implementation of the Drug and Alcohol Control Program and the Motor Vehicle Points System ***was not permitted by the terms of Article 6, the Management Rights clause, and was in conflict with Articles 17, 20, and 45 of the Agreement***.

The only comparison between Arbitrator Cooper's Award and the award in *Citgo* is that they both involved the implementation of drug policies. The fact that Arbitrator Cooper did not interpret the Plaintiff and Defendant's Agreement to prohibit the policies' implementation does not make Arbitrator Cooper's interpretation incorrect. So long as Arbitrator Cooper based his decision on the terms of the Agreement, which, as noted above, he clearly did, it is irrelevant how another arbitrator, or this Court for that matter, would have interpreted the Agreement if either was in Arbitrator Cooper's position. *Coastal Oil of New England, Inc. v. Teamsters Local Union No. 25*, 134 F.3d 466, 469 (1st Cir. 1998).

After distorting the circumstances of the *Citgo* decision, the rest of Clear Channel's Bench Memorandum consists of its feeble attempts to attribute positions and

opinions to Arbitrator Cooper that he never stated or made in hopes of drawing (tortured) parallels between Arbitrator Cooper's decision and that of the arbitrator in the *Citgo* case.

For example, Clear Channel makes much of Arbitrator Cooper's statement that "the issue of employee driving was also of little concern to AK Media/MA," and that there was "minimal concern between [AK Media and the Union] on alcoholism and drug abuse or safe driving." There is nothing improper with these conclusions, however, as they are based upon Cooper's reading of the language of the policies versus that found in Articles 17 and 20 the collective bargaining agreement. Cooper's statements simply reflect the fact that the parties obviously considered these issues, seeing as they included provisions in the collective bargaining agreement addressing such matters, but that they did not seek to provide the same attention to issues (in the form of drug testing and discipline), as Clear Channel now seeks to do. As Arbitrator Cooper ruled, the sole language the parties found to be critical regarding these issues was included in the collective bargaining agreement. This is further evidenced by the fact that Article 45 waives any future right to negotiate over issues addressed in the agreement.

One such example of Clear Channel's attempt to distort Arbitrator Cooper's findings is its claim in its Bench Memorandum that Arbitrator Cooper "decided that he preferred [AK Media's approach to maintaining a sober workplace] to Clear Channel/Boston's approach." (P. 13). **Nowhere in his Award does Arbitrator Cooper make any such mention of a personal preference for one approach or the other**. Arbitrator Cooper merely spelled out the differences between the language in the existing collective bargaining agreement with that found in the Drug and Alcohol Control Program, and concluded, quite correctly, that Clear Channel, which prefers drug testing

to all employees, approached the issue in a different way or "angle" as Cooper wrote. Since the question before the arbitrator, pursuant to the mandate of Article 6 and Article 17, was whether the new policies were consistent with the language in the collective bargaining agreement, his noting that the approach taken in the Drug and Alcohol Program was different than that taken in the collective bargaining agreement was just another way of stating that the policies were inconsistent with the terms of the collective bargaining agreement.

Similarly, contrary to Clear Channel's claim, Arbitrator Cooper did not "deride" the fact that the Motor Vehicle Points System "rendered an employee unable to operate a company vehicle 'if he or she has two speeding tickets within one year for driving in excess of 15 miles per hour over the posted speed limit, or that two fender benders produce the same result." There is no derision in these statements whatsoever; it is a fact that two speeding tickets for driving over fifteen miles per hour, or two accidents, will result in discipline under the Motor Vehicle Points System in the form of the removal of the employee's driving privileges. In contrast, pursuant to Article 17 of the agreement, an employee may only be removed from driving by request of an insurance carrier or because the employee's license has been revoked by the Commonwealth of Massachusetts.

In addition, Cooper did not "criticize Clear Channel's ability to randomly search employees," as the Company claims. Rather, in finding that the Drug and Alcohol Control Program was inconsistent with Article 20 of the collective bargaining agreement, Arbitrator Cooper stated that, among other things, the policy provided Clear Channel

with the right to randomly search employees. This, once again, is merely a statement of fact, not opinion.

Clear Channel also continually harps on the argument that there is no language in the collective bargaining agreement that specifically prohibits random drug testing; reasonable suspicion testing; blood, hair, and saliva tests; personal property examinations due to reasonable suspicion; or implementing the Motor Vehicle Points System. As Arbitrator Cooper noted, however, "the Agreement should not be read to require the specific prohibition of working conditions set forth in the Company's Drug and Alcohol Control Policy and the Motor Vehicle Points System." In other words, AK Media and the Union were not required to anticipate every possible future provision a successor employer might want to implement with respect to drug and alcohol abuse and safe driving in order to prohibit their implementation. It is enough that the collective bargaining agreement as written contains provisions concerning these issues, includes a management rights clause that mandates that any reasonable work rule be consistent with the terms of the agreement, and contains a zipper clause which states that neither party may be compelled to negotiate over terms that are already addressed in the agreement. This is not an unreasonable or unsupported reading of the agreement.

In contrast, under Clear Channel's interpretation of the agreement, it is free to do anything it chooses so long as the management rights clause does not specifically state, "Clear Channel may not implement a Drug and Alcohol Control Program," or "Clear Channel may not implement a Motor Vehicle Points System."

Furthermore, the fact that the Drug and Alcohol Control Policy contains a disclaimer stating that it does not change or supersede any collective bargaining does not

mean that its ***implementation*** of the program itself does not violate the collective bargaining agreement. Clear Channel's inclusion of self-serving statements within the policies themselves, such as the "Purpose" section of the Drug and Alcohol Control Program, does not absolve it of having to abide by the terms of the collective bargaining agreement.

      D.      <u>Arbitrator Cooper's Award Does Not Violate an Explicit, Well-Defined and Dominant Public Policy.</u>

An exception to the general rule that the scope of review of arbitration awards is extremely narrow occurs when the award is against "'an explicit, well-defined, and dominant public policy.'" *Coastal Oil of New England, Inc. v. Teamsters Local Union No. 25,* 134 F.3d 466,469 (1st Cir. 1998), quoting *Local 1445 United Food and Commercial Workers Int'l Union v. Stop & Shop Cos.,* 776 F.2d 19, 21 (1st Cir. 1985). "However, the public policy exception is limited to instances 'where the contract as interpreted [by the arbitrator] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Boston Medical Center v. Service Employees Int'l Union, Local 285,* 260 F.3d 16 (1st Cir. 2001), quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 43 (1987).

In *Boston Medical Center*, an arbitrator had reduced the discharge of an employee who had been terminated following the death of an infant under her care, to a nine-month suspension. Even though the arbitrator found that the Hospital had just cause to discipline the grievant, she ruled that discharge was too harsh a penalty. *Id.* at 20. The Hospital argued that the award should be vacated under the public policy exception, stating that the Commonwealth of Massachusetts has a "well-established public policy

ensuring that hospital patients receive proper health care." *Id. 23*. While the Court noted that "Massachusetts law reflects a concern for nursing competence and patient safety . . . the question is not whether [the grievant's] conduct violated a public policy in favor of competent nursing care, but whether the order to reinstate her violated that policy." *Id.*

Thus, the question here is not whether Massachusetts or federal law reflects a concern for safe driving and the prevention of drug and alcohol abuse, but whether Arbitrator Cooper's award, in which he ruled that Clear Channel's Drug and Alcohol Control Program and Motor Vehicle Points System are null and void because they are not reasonable work rules and, in any event, conflict with the terms of the collective bargaining agreement, violates some well defined public policy.

There is no doubt that drug and alcohol and safe driving policies are worthy concerns. However, such policies are not mandated by any state or federal laws or regulations, and there is no public policy in favor of allowing an employer to ignore the terms of a collectively bargained agreement so that it may implement policies it believes provide for a safer workplace.

In reviewing whether there was a public policy that prohibited the reinstatement of the grievant, the Court in *Boston Medical Center, infra,* stated that

> in considering whether Massachusetts has a well-defined public policy that prohibits the reinstatement of [the grievant] in these circumstances, we read 'the relevant statutory and regulatory provisions . . . in light of background labor law policy that favors determination of disciplinary questions through arbitration when chosen as a result of labor-management negotiation. *Id.* at 24, quoting *Eastern Associated Coal Corp. v. United Mine Workers of America,* 531 U.S. 57, 65 (2000).

The same principles apply here. In considering whether there is a well-defined public policy against an arbitration award that declared drug and alcohol and safe driving

policies null and void, any relevant statutory and regulatory provisions must be read in light of background labor law policy that favors the resolution of contractual disagreements through the parties' collectively bargained grievance and arbitration process.

First, Clear Channel cannot point to any specific, well-defined public policy that favors the implementation of drug testing or safe driving policies without regard to collective bargaining principles.  The Department of Transportation's regulations do not require that the bargaining unit employees in question submit to drug testing or a private assessment of their driving records. There is no law or regulation requiring that all employees in the workplace be drug tested, or that their driving records be subjectively scored by their employer.

Furthermore, the collective bargaining agreement already addresses the issues of drug and alcohol abuse and safe driving. The fact that the agreement does not read exactly the way that Clear Channel prefers does not, as Arbitrator Cooper held, provide it "with permission to drastically change the requirements of the Agreement."

An instructive case on the issue of the unilateral implementation of drug policies and the public policy exception to the vacating of arbitration awards is *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169 (9th Cir. 1995).  Without bargaining with the union, the employer had unilaterally implemented a random drug testing program to comply with Department of Transportation regulations mandating various forms of drug testing for commercial vehicle operators. *Id.* at 171.  While under DOT regulations, an employer must conduct random annual testing of 50% of its drivers, they do not require an employer to terminate

an employee who tests positive for drug use. *Id.* The employer had terminated the first two employees who tested positive under the new policy, and the Union grieved their terminations as well as the employer's implementation of the random drug testing procedure. *Id*. at 172.

The arbitrator found that the employer breached the collective bargaining agreement by "failing to notify the union of its intention to implement the drug testing program and in failing to bargain with the Union over the non-mandatory and discretionary elements of the drug testing program." *Id.* The arbitrator therefore concluded that "the right to manage and direct does not privilege unilateral implementation of such a policy," and reinstated the two employees and temporarily rescinded the drug testing program until the employer bargained with the union over non-mandatory and discretionary aspects of the program, including the issues of discipline and rehabilitation. *Id.*

In reviewing the arbitrator's award, the Ninth Circuit held in *Foster Poultry* that there was no public policy that prohibited the arbitrator's award:

> The DOT regulations also do not express a public policy prohibiting employers from bargaining with unions over non-mandatory and discretionary aspects of the drug testing program. Although implementing a random drug testing program is mandatory and failure to do so may subject an employer to various penalties, there is no indication in the relevant statutes, the legislative history, or the regulations themselves that the drug testing requirements were intended to preempt already existing collective bargaining agreements or to eliminate an employer's duty to bargain under federal labor laws. *Id.* 174.

The Court further noted that the DOT expected employers to bargain in good faith with unions over the non-mandatory aspects of the drug testing regulations that the DOT had left to the employer's discretion, since the regulations provide that "'issues such as

termination, reassignment, hiring of temporary drivers to fill a position or policies regarding a driver's absence from a position are . . . issues that appropriately are the subject of labor-management negotiations and are *not* issues to be addressed in this rulemaking action.'" *Id.* at 175.  See also: *Eastern Associated Coal Corporation v. United Mine Workers of America, District 17,* 531 U.S. 57 (2000) (arbitration award reinstating discharged truck driver who twice tested positive for marijuana was not contrary to public policy where neither the Omnibus Transportation Employee Testing Act of 1991, nor DOT regulations, forbade an employer from reinstating to a safety-sensitive position an employee who failed a random drug test: "we hesitate to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created.").

Here, the drug testing policy implemented by Clear Channel is not even mandated by federal DOT regulations.  If an employer is required to bargain over aspects of a federally-required drug testing program, as was the case in *Foster Poultry,* then it surely is required to do so with respect to drug testing policies that are not required by law or regulation.

Thus, there is no public policy that prohibits Arbitrator Cooper from declaring the Drug and Alcohol Control Program, as well as the Motor Vehicle Points System, null and void where Clear Channel unilaterally implemented such programs, and where those programs are inconsistent with the terms of the existing collective bargaining agreement.

As Clear Channel cannot articulate any distinct, well-defined public policy grounded in either federal or state law or regulation that will be violated by the enforcement of Arbitrator Cooper's Award, the Award must be enforced.

IV.   Conclusion

For all of the foregoing reasons, and on the record as a whole, Defendant respectfully requests that the Court enforce Arbitrator Cooper's Award, deny Plaintiff's Motion to vacate Arbitrator Cooper's award, and order Clear Channel to rescind the Drug and Alcohol Control Program and the Motor Vehicle Points System in their entirety.

    Respectfully submitted,

    For the Defendant,
    Painters and Allied Trades
    District Council No. #35
    By its Attorney,


    /s/ Jonathan M. Conti
    Jonathan M. Conti, BBO#657163
    Feinberg, Campbell & Zack, P.C.
    177 Milk Street
    Boston, MA 02109
    (617) 338-1976

DATED: May 20, 2005


## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, hereby certify that I caused a copy of the foregoing document to be served in hand upon George A. Berman, Esq., Peabody & Arnold, LLP, 30 Rowes Wharf, Boston, MA 02110 and via overnight mail to Glenn E. Plosa, Esq., The Zinser Law Firm, P.C., 150 Second Avenue North, Suite 410, Nashville, TN 37201.


    /s/ Jonathan M. Conti
    Jonathan M. Conti

Dated:  May 20, 2005